## BENHAM et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1926.)

No. 4617.

1. Post office ⬤═➤48(4)—Indictment for using mails to defraud held sufficient, without allegation of guilty knowledge when letters were mailed.

Where an indictment for using the mails to defraud alleged the mailing of letters for the purpose of executing the fraudulent scheme set out, and at all times mentioned accused knew scheme was 'one to defraud, no further averment of guilty knowledge at the time of mailing was required.

2. Criminal law ⬤═➤1167(2).

Denial of motion to require government to furnish definite statement of portions of indictment on which it would rely was not prejudicial, where government later filed written election, definitely stating portions on which it relied.

3. Witnesses ⬤═➤268(1)—Cross-examination of witnesses as to selling price of properties subsequent to transactions charged held not substantially erroneous.

On trial for using mails to defraud, where government claimed certain corporations were operating at a loss during period involved, and defendant introduced evidence of value, at time of trial, of property owned by one of them, held, that there was no error in permitting cross-examination as to amount for which such property had been sold at receiver's sale, and no substantial error in permitting cross-examination as to amounts for which assets of the others were so sold.

4. Post office ⬤═➤50—Instruction in trial for using mails to defraud approved.

In a prosecution for using the mails to defraud, it was not error to instruct the jury that they might consider the letters set out in the indictment on the question as to the existence

or nonexistence of the alleged fraudulent scheme.

### 5. Criminal law ⬛ 1167(2).

Election by prosecution before trial to proceed only on certain portions of certain counts of the indictment *held* without prejudice to defendants.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Criminal prosecution by the Unites States against William G. Benham and Dwight Harrison. Judgment of conviction, and defendants bring error. Affirmed.

Smith W. Bennett, of Columbus, Ohio (Robert R. Nevin, of Dayton, Ohio, on the brief), for plaintiffs in error.

Simon Ross, Asst. U. S. Atty.; of Cincinnati, Ohio (Haveth E. Man and Harry A. Abrams, both of Cincinnati, Ohio, on the brief), for the United States.

Before DENISON and MOORMAN, Circuit Judges, and WESTENHAVER, District Judge.

PER CURIAM. This is the second appearance of this cause in this court. On a former writ of error, a verdict of guilty and sentence on 11 counts was reversed and a new trial ordered. 7 F.(2d) 271. In our former opinion is found a full statement of the case, including the indictment in an abridged form, so that no further statement is now required.

It was then held that the introductory portions of the indictment, charging a scheme to defraud and to obtain money by false pretenses, including as a part of such scheme the charges made in subdivision (*a*), were too vague and indefinite to state an offense and support a conviction, but that such introductory portions, including the charges made in subdivisions (*b*) and (*c*), were not too vague and indefinite. It was only because this court, upon the record, could not say that the jury might not have reached any other conclusion as to the charges made in subdivisions (*b*) and (*c*) that the conviction was reversed and a new trial ordered. In the lower court, before retrial, the government filed, in writing, a specific election to try defendants upon counts 1 to 11, except such parts thereof which included subdivision (*a*), and upon certain of these counts as they included only subdivision (*b*), and upon certain others as they included only subdivision (*c*).

Before starting the trial, counts 7, 9, and 10 were nollied. At the conclusion of the government's case, count 4 was also nollied. A verdict of guilty was returned on counts 1, 2, 3, and 8, and of not guilty on counts 5, 6, and 11. As a result, defendants were convicted and sentenced only upon those counts which included as a part of the general scheme, the specific charges made in paragraph (*b*), and were found not guilty as to those counts which included the charges contained in subdivision (*c*). The former pertain to sales of preferred stock of the International Note & Mortgage Company, and the latter to sales of preferred stock of the Phœnix Portland Cement Company. It is to reverse the conviction and sentence on these four counts that this proceeding in error is prosecuted.

Upon an examination of the entire record, we are of opinion that the second trial was conducted in strict conformity to the principles stated in our former opinion, and that all errors committed on the first trial, to which attention was then directed, were carefully and scrupulously avoided. In so far as the errors now urged pertain to questions then considered and decided, we adhere to our former opinion, and see no reason to reopen any of them for re-examination. In this opinion, consideration will be given only to such assignment of errors as raise some new and different question pertaining to the retrial.

[1] Error is assigned to the refusal to grant leave to file a special demurrer. In view of the time at which the request was made, the refusal was within the discretion of the trial court. It was also properly refused, because the objection to the indictment sought to be raised is without merit. The objection was that the indictment does not aver that the defendants, at the times mentioned as having employed the mails, knew the representations relied on to establish the scheme to defraud were false, fraudulent, or untrue. This objection is based upon a misunderstanding of the averments of the indictment. It is alleged therein that the several letters were mailed for the purpose of executing and attempting to execute that fraudulent scheme, and, inasmuch as that scheme is alleged to have been in existence during the entire period, no additional averment of such guilty knowledge at the time the letters were mailed, is required. Moreover, all counts aver that the defendants, at all times mentioned in the indictment, well knew that the substantive scheme set forth was a scheme and artifice to de-

fraud, and this necessarily includes guilty knowledge at the time the several letters were mailed.

[2] Error is also assigned to the refusal of the court to grant a motion for a further bill of particulars. What the motion asked was "a definite statement of the portions of said indictment upon which he (United States attorney) will rely in the trial of said cause." The written election, later filed, definitely stated the portions of the indictment upon which the government relied quite as fully as was requested by the motion. If, therefore, the trial court unwisely exercised its discretion in refusing this motion, all error and prejudice were fully removed by the later written election.

[3] Only one error having substance is assigned to the rulings of the court in admitting or rejecting evidence. Four witnesses, Pennington, Fleming, Dean, and Irving, were permitted, over objection and exception, to state the prices at which certain assets of four of the so-called Dollings subsidiary companies were sold at receivers' sales. On July 19, 1923, receivers were appointed for the R. L. Dollings Company, and later for a number of its so-called subsidiaries. Defendants were charged with having diverted to these subsidiaries most of the money derived from the sale of the preferred stock of the International Note & Mortgage Company, which conduct, because of representations made as to the nature of the business in which that company was and had been engaged, and as to the nature, quality, and value of its stock and of its earnings, was relied on to support the counts on which they were found guilty.

As bearing on the falsity of these representations and defendants' knowledge thereof, evidence was offered by the government as to the financial condition of these subsidiaries when these advances were made, particularly that they were being operated at a loss, and that the capital of most of them was impaired. Defendants, in reply, offered evidence tending to show that one subsidiary, the Phœnix Portland Cement Company, had been operated successfully under the receivership, and that the receivership had been lifted, and it was now a going and prosperous concern. As to another, the Florida Farms & Industry Company, defendants offered evidence to the effect that the lands owned by it, consisting of 130,000 acres, were, in October, 1925, the date of the trial, worth $20 to $25 an acre. On cross-examination, the witness Pennington, who so testified, was asked and required to answer that these lands had been sold by the receiver for some $400,000.

As to three other subsidiaries, defendants offered in evidence the valuation of their respective physical assets as appraised or as carried on their books at the time the advances were made or when the receivers were appointed. It was also on cross-examination that the witnesses who so testified were asked and required to answer that these physical assets had been sold by the receiver for only a fractional part of these appraised or book values. The dates at which these several sales were made ranged from one year to one year and ten months after the receivers were appointed. At the time these answers were made, and also in his charge, the trial judge carefully instructed the jury that they might be considered only for what they were worth as evidence of the value of the tangible assets, or that those assets had no market value, and also called the jury's attention to the conditions under which the sales were made, as bearing on the weight to be given thereto.

Under these circumstances, we are not prepared to say that these rulings were technically erroneous. Certainly, as to the instance in which the defendants had first offered evidence of the subsequent history and later market value, it was not improper to permit these inquiries on cross-examination. If the defendants thought it proper to bring the history of certain subsidiaries down to date, they have slight ground to complain if the government did the same as to the other subsidiaries. The range of cross-examination is always a matter largely within the discretion of the trial court, depending on a variety of considerations, chief among which is the remoteness of the matter inquired about to the pivotal issue. In view of all the circumstances, including the remoteness of the subject-matter to the vital issue and the instructions given by the trial judge, we are of opinion that no substantial error was committed. Even if the rulings were erroneous, and the trial judge had unwisely extended the range of cross-examination, we are still of opinion, upon the whole record, that such error is not prejudicial enough to call for a reversal.

[4] Only one error is assigned to the charge. In summarizing the evidence from which the jury were to find the existence or nonexistence of the scheme to defraud, the trial judge told the jury that they might consider "also the statements in the so-called indictment letters themselves." In this statement no error is perceived. These letters

were mailed or caused to be mailed by the defendants. They contain representations of the same kind and character as those proved by other witnesses, relied upon to establish defendants' guilt. They contain internal evidence as having been mailed in furtherance of the general scheme. It should be added that the charge covers 20 pages of the record, and is manifestly fair to the defendants, as is evidenced by the trivial nature of this single criticism of it.

Defendants, at the conclusion of all the testimony, moved for a directed verdict on the grounds that the indictment does not charge an offense punishable under the laws of the United States; that the government has failed to make out a case punishable under the laws of the United States; that there is a total failure of proof as to any unlawful scheme such as is charged in the indictment; that there is a variance between the proof offered and the scheme as alleged; and that the allegations of the indictment are so vague and indefinite as not to advise defendants of the offense for which they were put on trial. Most, if not all, of these grounds are ruled adversely to defendants by our former opinion. They are again urged probably as a matter of precaution.

It is difficult to determine from counsel's argument just what grounds of objection they think are new, or in what way the proof fails to support the charge, or in what way there is a variance between the proof and the charge. Certainly the evidence fully and adequately supports the charges of the indictment limited to the counts on which defendants were convicted; but apparently counsel think that proof sufficient for this purpose is not sufficient to support the charges of the indictment as returned by the grand jury. This is merely another way of urging objections ruled adversely to defendants by our former opinion.

[5] On this trial, however, each count was narrowed beyond the limitations imposed by our former opinion, as the result of the elimination of the charges found in subdivision (c) of the four counts on which defendants were found guilty. No error to their prejudice is perceived by this further narrowing of the issues. On the contrary, it inured to their benefit, since the jury found them not guilty on those counts, which included only the charges made in subdivision (c). Nor, in our opinion, was it improper thus further to narrow the issue. If the second trial had proceeded without this further limitation, and if, at the conclusion of the government's case, or of the entire case, the written election had then been made, or the trial judge had then withdrawn from the consideration of the jury all evidence tending to support the fraudulent scheme which included the charges made in subdivision (c), no error would have been committed. It is quite usual, during or at the end of the taking of testimony, to require an election or to exclude from consideration charges not adequately supported by the evidence. That this course was adopted at the beginning instead of at the end of the trial does not make it any more erroneous or prejudicial. If it be thought that the written election destroyed the dependency of the charges made in subdivisions (b) and (c) upon the general scheme, thus creating duplicity as a result of including subdivisions (b) and (c) in the same count, without any connecting general scheme, an adequate answer is found in Connors v. United States, 158 U. S. 408, 411, 15 S. Ct. 951, 39 L. Ed. 1033.

In so far as defendants' motion is based upon the insufficiency of the evidence to sustain the conviction, it is without merit. We have read with attention the entire record. We deem it unnecessary to review the evidence. It is sufficient to say that the evidence amply supports the finding that there was in existence a fraudulent scheme within the terms of section 215, Criminal Code (Comp. St. § 10385), in marketing preferred stock of the International Note & Mortgage Company as early as August 21, 1921, if not at the date of the organization of that company, and that it continued in existence during all the intervening period down to July 19, 1923, and that defendants were at all times fully cognizant of it and responsible for it, and also that the letters set forth in counts 1, 2, 3, and 8, were mailed or caused to be mailed by the defendants in the furtherance of it. It is not too much to say that no other verdict would have been justified. On the whole, this record appears to be unusually free from error of any kind, although it was obviously tried by defendants' counsel with a view to producing a record having reversible error. The trial judge appears to have carefully protected the just rights of the defendants, and his rulings upon questions of evidence and his charge to the jury were not unfavorable to them.

The conviction and sentence will be affirmed. Mandate will issue forthwith.