**STUDENT NON–VIOLENT COORDI-NATING COMMITTEE et al., Appellants,**

v.

**Carl SMITH, Appellee.**

**No. 23114.**

United States Court of Appeals Fifth Circuit.

Aug. 23, 1967.

C. B. King, Albany, Ga., Howard Moore, Jr., Atlanta, Ga., Melvyn Zarr, Charles Stephen Ralston, Jack Greenberg, Charles H. Jones, Jr., New York City, Anthony G. Amsterdam, Washington, D. C., of counsel, for appellants.

H. P. Burt, Burt & Burt, Donald D. Rentz, Albany, Ga., for appellee.

Before BROWN, Chief Judge, COLEMAN, Circuit Judge, and DAWKINS, District Judge.

JOHN R. BROWN, Chief Judge:

This civil rights removal case is more fallout from "the Albany, Georgia imbroglio. See Kelly v. Page, 5 Cir., 1964, 335 F.2d 114; Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34", Smith v. United States, 5 Cir., 1967, 375 F.2d [April 3, 1967]. Smith,[1] the plaintiff, sued the defendants[2] in the Georgia State Court for damages growing out of picketing of his store. His claim was that the defendants had conspired to boycott his store because of his service on a recent federal jury which tried a civil rights case against the sheriff of Dougherty County, Georgia and found for the sheriff. The defendants[3] removed the case to the Federal Court under the Civil Rights Removal provisions of § 1443 (1).[4] The District Court remanded it to the State Court.

Thus it is another in a long line of removal cases beginning with Strauder v. West Virginia, 1880, 100 U.S. 303, 25 L.Ed. 664, and State of Virginia v. Rives, 1880, 100 U.S. 313, 25 L.Ed. 667, Kentucky v. Powers, 1906, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633, culminating in the Supreme Court's recent pronouncements in Rachel v. State of Georgia, 1966, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925, and City of Greenwood, Miss. v. Peacock, 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944. And even more recently this Court's decision in Bass v. State of Mississippi, 5 Cir., 1967, 381 F.2d 692 [No. 24029, July 31, 1967].

The grounds asserted for removal were twofold. First, it was claimed, that the

---

1. The plaintiff is Carl Smith, owner and operator of a grocery store named Foodland Supermarket.

2. The defendants are persons claiming to be interested in promoting equal political, social, and legal rights for all citizens of Albany, Georgia, regardless of race. This includes the Student Non-Violent Coordinating Committee.

3. One defendant did not join. But in view of our disposition we need not determine whether this frustrated removal. See IA.J. Moore, Federal Practice ¶ 0.168, at 1171; CF. as to 28 U.S.C.A. § 1442 IA.J. Moore, Federal Practice, ¶ 0.168, at 1175–1176.

4. The civil rights removal statute provides: "Any of the following civil actions or criminal prosecutions, commenced in a state court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such state a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."
28 U.S.C.A. § 1443.

real purpose of this suit was to harass, intimidate and obstruct the defendant's exercise of their constitutionally protected right to freedom of speech and peaceful protest against racially discriminatory policies in the City of Albany. Therefore, the pendency of the action in the courts of the State of Georgia would deny them equal protection of the laws under the First and Fourteenth Amendments of the Constitution and 42 U.S. C.A. § 1983. The second had to do with racial jury exclusion. The defendants asserted that they could not enforce and were denied in the courts of Georgia the right to be free of racial discrimination or segregation in the composition of the jury which would try the present suit. Such denial arose because the jury commissioners are required by Ga.Code Ann. § 59–106[5] to select the names of persons eligible for jury service in criminal and civil proceedings from the tax digests of the respective county. Under Ga. Code Ann. § 92–6307,[6] these tax digests are maintained and organized on the basis of race or color in that Negro and white taxpayers are listed separately.

Time, tide, and now and then the law wait on no man. But here by waiting,[7] time and outside events have worked toward an affirmance of an order of possible initial limited mortality.

In view of *Peacock* and *Rachel*, nothing need be said as to the first ground which invoked the First and Fourteenth Amendments. Whatever other Federal remedies might be available to vindicate these rights[8] they do not meet the *Rachel* test of a statute providing for specific civil rights stated in terms of racial equality. Bass v. Mississippi, 5 Cir., 1967, 381 F.2d 692 [No.

---

5. 59–106. "Revision of jury lists. Selection of grand and traverse jurors.—Biennially, or, if the judge of the superior court shall direct, triennially on the first Monday in August, or within 60 days thereafter, the board of jury commissioners shall revise the jury lists.

   The jury commissioners shall select from the books of the tax receiver upright and intelligent citizens to serve as jurors, and shall write the names of the persons so selected on tickets. They shall select from these a sufficient number, not exceeding two-fifths of the whole number, of the most experienced, intelligent, and upright citizens to serve as grand jurors, whose names they shall write upon other tickets. The entire number first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county, to be drawn for service as provided by law, except that when in drawing juries a name which has already been drawn for the same term as a grand juror shall be drawn as a traverse juror, such name shall be returned to the box and another drawn in its stead." (Acts 1878–9, pp. 27, 34; 1887, p. 31; 1892, p. 61; 1899, p. 44; 1953, Nov. Sess., pp. 284, 285; 1955, p. 247.)

6. 92–6307 "Entry on digest of names of colored persons.—The tax receivers shall place the names of the colored taxpayers, in each militia district of the county, upon the tax digest in alphabetical order. Names of colored and white taxpayers shall be made out separately on the tax digest." (Acts 1894, p. 31.)

7. This Court postponed decision pending decisions of the Supreme Court in State of Georgia v. Rachel, 1966, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925; City of Greenwood, Miss., v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed. 944 reviewing our earlier decisions (Rachel, March 5, 1965, 5 Cir., 342 F.2d 336; Peacock, June 22, 1965, 5 Cir., 347 F.2d 679); as well as the decision in Whitus v. State of Georgia, 1967, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed. 599; and Sims v. State of Georgia, 1967, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed. 593 especially in view of the questions accepted for review, see no. 4(2), Now 385 U.S. 538, 87 S.Ct. 640, 17 L.Ed.2d 595.

8. In Peacock, 384 U.S. 808 at 829–830, 86 S.Ct. 1800 at 1813–1814, 16 L.Ed.2d 944, at 957–958, the Court indicated the other remedies that would be available. Injunction, Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; set aside the convictions for denial of due process, Thompson v. City of Louisville, 1960, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654; Habeas Corpus, Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; and if their federal claims have been violated by an unfair factfinding process, that can be corrected by a federal court, Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770.

24029, July 31, 1967]. Remand on this score was proper.

■ And so too has it become on the racial jury exclusion ground. We phrase it this way for the passage of time and events eliminates the two questions whether the race-indicated tax digest (note 6 supra) and its mandatory use in making up the jury lists (note 5 supra) (1) was itself an invalid statutory structure apart from administration under it and (2) if so, was this such a statute as to satisfy the *Peacock-Rachel* standard of a prediction that the right to a trial free from racial jury exclusion would be denied or could not be enforced in the state courts. These events also make it unnecessary for us to divine whether

*Whitus and Sims* (see note 7 supra) apart from maladministration under them condemns the Georgia statutes (notes 5 and 6 supra) outright because of the system and the ready opportunity for discrimination.

For these statutes have been repealed and no trace of statutory racial distinctions remain. Former § 92–6307 (note 6 supra) has been so thoroughly replaced [9] as to be scarcely recognizable.[10] And the successor to § 59–106 [11] (note 5 supra) abandoning completely any tie into the tax digests bears the strong imprint of recent decisions on jury composition including perhaps some of our own en banc.[12]

9. 92–6307. "Tax receivers or commissioners to accumulate statistical information. —The several tax receivers or tax commissioners shall accumulate such statistical information in regard to taxpayers of such nature as they shall deem to be of benefit to the State Revenue Commissioner, and nothing herein shall preclude or prohibit the State Revenue Commissioner from collecting such information as he shall deem necessary and beneficial in discharging the official duties of his office." (Acts 1966, p. 393.)

10. The codifiers state: "Editorial Note. —Acts 1966 p. 393, repealed the former section of this number and substituted a new § 92–6307, which has little in common with the original section as to subject-matter. The original section was entitled 'Entry on digest of names of colored persons' and was based upon Acts 1894 p. 31."

11. Section 1. "Section 59–106 of the Code of Georgia of 1933, relating to the revision of jury lists and the method whereby jury commissioners choose grand and traverse jurors, is hereby amended by striking same in its entirety and inserting in lieu thereof a new section 59–106 to read as follows:
"59–106. Immediately upon the passage of this Act and thereafter at least biennially, or, if the judge of the superior court shall direct, at least annually, on the first Monday in August, or within sixty (60) days thereafter, the board of jury commissioners shall compile and maintain and revise a jury list of upright and intelligent citizens of the county to serve as jurors. In composing such list

they shall select a fairly representative cross-section of the upright and intelligent citizens of the county from the official registered voters' list which was used in the last preceding general election. If at any time it appears to the jury commissioners that the jury list, so composed, is not a fairly representative cross-section of the upright and intelligent citizens of the county, they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including upright and intelligent citizens of any significantly identifiable group in the county which may not be fairly represented thereon.
After selecting the citizens to serve as jurors, the jury commissioners shall select from the jury list a sufficient number, not exceeding two-fifths of the whole number, to serve as grand jurors. The entire number first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county to be drawn for service as provided by law, except when a name which has already been drawn for the same term as a grand juror shall also be drawn as a traverse juror, such name shall be returned to the box and another drawn in its stead."
Section 2. All laws and parts of laws in conflict with this Act are hereby repealed."
Approved March 30, 1967.

12. These were Davis v. Davis, 5 Cir., 1966, 361 F.2d 770; Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34; Jackson v. United States, 5 Cir., 1966, 366 F. 2d 34; Scott v. Walker, 5 Cir., 1966, 358

The result is that measuring today the propriety of an earlier remand of a case we must reckon with the fact that this ground for removal no longer exists. No longer is there the requisite state statute on which to base the prediction that the parties will be denied or cannot enforce in the state courts the federally recognized right to a trial free of racial discrimination.

With the cases back in the state court there is no statute which will deny the federal right. Likewise, there is now no statute which makes enforcement of that right in the state courts unobtainable. If impermissible discrimination occurs it will come, not from the statutory scheme, but from maladministration. Removal under § 1443(1) is not the remedy for that.

Affirmed.

F.2d 561; Billingsley v. Clayton, 5 Cir., 1966, 359 F.2d 13; Brooks v. Beto, 5 Cir., 1966, 366 F.2d 1; Labat v. Bennett, 5 Cir., 1966, 365 F.2d 698.