UNITED STATES of America,
Appellant,

v.

HOLMES COUNTY, MISSISSIPPI et al.,
Appellees.

No. 21548.

United States Court of Appeals
Fifth Circuit.

Oct. 24, 1967.

Howard A. Glickstein, Atty., Dept. of Justice, Burke Marshall, Asst. Atty. Gen., Robert E. Hauberg, U. S. Atty., Harold H. Creene, Peter S. Smith, Attys., Dept. of Justice, Washington, D. C., for appellant.

Will S. Wells, Asst. Atty. Gen., Jackson, Miss., H. Edwin White, Lexington, Miss., for appellees.

Before BROWN, Chief Judge, BELL, Circuit Judge, and HUNTER, District Judge.

JOHN R. BROWN, Chief Judge:

In this 1963 civil rights voter-registration case, the United States sought injunctive and other relief against various officers of Holmes County, Mississippi, for violation of voting rights under 42 U.S.C.A. § 1971 [1] of Negroes residing in that county. Postponing decision pending various legislative developments and intervening judicial decisions we see again that "[t]ime, tide, and now and then the law wait on no man. But here by waiting, time and outside events have worked toward an affirmance of * * * [a decision] of possible initial limited mortality." Student Non-Violent Coordinating Committee v. Smith, 5 Cir., 1967, 382 F.2d 9 [August 23, 1967].

The United States, under § 1971(a), (b), (c), sought injunctive relief against Holmes County, Andrew P. Smith, Deputy Sheriff of Holmes County, Pat M. Barrett, County Attorney of Holmes County, and Parham H. Williams (since succeeded by George Everett, F.R.Civ.P. 25(d) (1)), District Attorney for the Fourth Judicial District of Mississippi. Probably as the main attack, the complaint alleged that Defendant Smith, since assuming the office of Sheriff and Tax Collector for Holmes County in 1956, had followed the racially discriminatory

1. The pertinent parts of 42 U.S.C.A. § 1971 provide:

"(b) No person * * * shall intimidate, threaten, coerce or attempt to intimidate, threaten or coerce any other person for the purpose of interfering with the right of such other person to vote * * *.

"(c) Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States * * * a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction * * *.

"(e) In any proceeding instituted pursuant to subsection (c) of this section * * * the court shall upon request of the Attorney General and after each party has been given notice and the opportunity to be heard make a finding whether such deprivation was or is pursuant to a pattern or practice."

policy of refusing to permit Negroes to pay their poll taxes.[2] It further asserted that Defendants Smith, Barrett, and Williams arrested and prosecuted certain Negroes in Holmes County and several Negro voter registration workers because of their activities in registration of Negroes for the purpose of intimidating, threatening, and coercing the Negro citizens of Holmes County to prevent and discourage such registration.

The facts, as viewed by the Government, can be briefly stated. From 1956, when Andrew Smith became Sheriff, until the spring of 1963 no Negro was registered to vote in Holmes County. Several Negro voter registration workers, at the behest of Negro farmers in Holmes County, came to Holmes County to attend a series of voter registration meetings for the purpose of initiating a voter registration drive. On April 9, 1963, 14 Negro citizens went to the county courthouse for a meeting. When approached by Sheriff Smith, the group told him they had come to register. None was allowed to register by the Circuit Court Clerk and Registrar, and only two were given registration forms to fill out. That afternoon Hartman Turnbow took the test and was notified that he had not passed and "that he was never going to pass."

About 3:00 a. m. on the morning of May 8, 1963, Hartman was awakened by the sound of an explosion. He grabbed his .22 calibre rifle and went into the hall and noticed the living room and back bedroom were full of flames and smoke. Going outside, Turnbow said he saw two men standing near the side of the house. One of the men had a pistol in his hand and immediately began firing at Turnbow who returned the fire until the intruder and his companion ran off. After several unsuccessful attempts to contact the Sheriff's office, Sheriff Smith was finally summoned to the scene and arrived at 9:00 a. m. accompanied by a deputy and an F.B.I. agent. During the investigation by these officers, Robert Moses, a non-Mississippi voter registration worker, was taking pictures of the scene of the fire. One of the investigators told Moses to stop taking the pictures. While he was sitting on a chair inside a screened porch, Moses took Sheriff Smith's picture. Moses was immediately arrested and confined for interfering with the investigation.[3] Later Turnbow was arrested on the charge of arson. Like charges were made against other registration workers upon their making inquiry at Smith's offices concerning the charges against Moses. At the preliminary hearing Turnbow was bound over for the Grand Jury under $500 bond, but the arson charges against the registration workers were dismissed.

Later, in October 1963, on the presenting of the arson charge against Turnbow, the Holmes County Grand Jury voted not to indict. But to the newer charge, the Grand Jury did indict Hartman Turnbow and his wife for unlawful cohabitation.[4]

2. As in United States v. Dogan, 5 Cir., 1963, 314 F.2d 767, it is the unusual case of a citizen trying to pay a tax, not avoid it. There is no riddle, however, since at that time payment of a poll tax to the Sheriff for the *two* preceding years was a prerequisite to Mississippi voting.

3. Moses was tried on the charge of violating Miss.Code § 2294 in that "he did willfully and unlawfully obstruct and impede Andrew Smith, deputy sheriff, while said Andrew Smith was conducting a lawful investigation of an alleged case of arson by repeatedly photographing said officer, after being requested not to do so."

The evidence presented came from Smith alone who testified that it was "upsetting for someone to sit and take pictures of you while you were trying to work."

Upon conviction by the Justice of the Peace, Moses was fined $50, posted bond for trial de novo appeal to the Circuit Court which lapsed from non prosecution by him.

No effort has been, or presumably will be, taken to collect the fine or forfeit the bond. If such action is taken or threatened, we assume (without deciding) Moses can invoke Thompson v. City of Louisville, 1960, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654; Edwards v. South Carolina, 1963, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697.

4. The Turnbows had been living together for four years, the last three of them in Holmes County and were married sev-

The Turnbows pleaded guilty and were fined $200 and the costs of the Court.

It winds up the summary to point out that as to the main charge of refusal to allow payment of the poll tax, the case was stark and uncontradicted. The Sheriff openly acknowledged his practice, sought to defend it on the unlikely ground that, as he understood the law, only registered voters were authorized to pay and finally promised to do good when informed by the Attorney General's office of the error of his ways just shortly before the hearing below. The District Court found against the United States on virtually all counts, issued no injunctions [5] but retained jurisdiction over Sheriff Smith for the duration of his term of office.

■ At the outset it is plain that the District Court was in error in holding that Holmes County was not a "person" under 42 U.S.C.A. § 1971, hence the Government had no statutory right to sue. See Griffin v. County School Board of Prince Edward County, 1964, 377 U.S. 218, 233, 84 S.Ct. 1226, 12 L.Ed.2d 256, 266. Since the word "person" includes a county under 42 U.S.C.A. § 1983, we have no doubt that a "person" under 42 U.S.C.A. § 1971(b) also includes a county, since both were enacted with the aim of vindicating constitutionally protected rights. Actually, the literal wording 42 U.S.C.A. § 1971(c) recognizes that, a county is suable by the United States.[6] And all of this is implicit in our recent decision of United States v. Leflore County, 5 Cir., 1967, 371 F.2d 368.

■ Another thing was equally wrong. Considering the impact of a "pattern and practice" finding and the intimidating acts done by the Sheriff as found by the Trial Court, it was compelled on this record to make such finding. United States v. Ward (Louisiana) 5 Cir., 1965, 349 F.2d 795, 801; United States v. Ramsey, 5 Cir., 1965, 353 F.2d 650, 654 and n. 14.

■ Time, tide, and the march of the law, now with heavy constitutional steps, have reduced the main poll tax question to almost nothing. For the poll tax is dead, nationally [7] and in Mississippi.[8]

---

eral months before the Grand Jury met. Barrett, the County Attorney, acknowledged that this was the first prosecution for unlawful cohabitation since 1938.

5. The formal prayer sought an injunction to enjoin the defendants from (a) refusing to accept poll tax payments from persons because of their race, (b) intimidating, threatening or coercing any persons for the purpose of interfering with the rights of those persons to pay their poll tax or to become registered to vote in Holmes County, (c) arresting or prosecuting any persons for the purpose of interfering with their rights to pay poll tax or to become registered to vote in Holmes County. Following the second hearing, January 3, 1964, the Government requested the following additional relief based on intervening events (see F.R.Civ.P. 54(c); 15(b)):

(1) That defendant Smith be enjoined from assessing and collecting a $1.00 penalty against Negroes for the late payment of 1962 poll taxes and that any such penalties already assessed and collected should be returned; (2) that defendants be enjoined from proceeding with the execution of judgment against Robert Moses on the offense of obstructing an investigation for which he had been found guilty and fined; (3) that defendants be ordered to return fines and court costs collected from Hartman Turnbow and his wife following their conviction on the charge of unlawful cohabitation.

6. Section (c) provides that "[w]henever, in a proceeding instituted under this subsection any official of a State *or subdivision thereof* is alleged to have committed any act or practice constituting a deprivation of any right or privilege * * * *the act or practice shall also be deemed that of the State* and the State may be joined as a party defendant * * *" (Emphasis added). 42 U.S.C.A. § 1971 (c).

7. Harper v. Virginia State Board of Elections, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169; Texas v. United States, 1966, 384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434, aff'g D.C.Tex., 1966, 252 F. Supp. 234.

8. United States v. State of Mississippi, S.D.Miss., 1966, 256 F.Supp. 344.

Although the passage of time and its portentous events now brand the poll tax as organically invalid—a congenital defect traceable perhaps back to the great void, cf. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L. Ed.2d 601, we would for Holmes County have to accord the same treatment as for Sunflower County during the same era. In Hamer v. Campbell, 5 Cir., 1966, 358 F.2d 215, cert. den. 1966, 385 U.S. 851, 87 S.Ct. 76, 17 L.Ed.2d 79, we allowed late payment of poll taxes but required it for the two years, that leaves only the penalty for late payment. At this late date, including sweeping constitutional, Federal,[9] and Mississippi[10] statutory changes, we do not think this warrants reversal and rendition on such an ineffectual thing. Cf. Exposition Press Corp. v. F. T. C., 2 Cir., 1961, 295 F.2d 869, 873. (Lumbard, J., for Friendly, J.).

■ This brings us to the criminal prosecutions. We are not troubled about the power of the Federal Court under the Civil Rights Act to grant effective relief to the national sovereign against state prosecutions or the execution of judgments of conviction. United States v. Leflore County, 5 Cir., 1967, 371 F.2d 368; United States v. McLeod, 5 Cir., 1967, 385 F.2d 734 [Nos. 21475, 21477, Oct. 16, 1967]; United States v. Clark, N.D.Ala., 1965, 249 F.Supp. 720. Indeed, relief of this character was recognized in *Peacock*.[11] The concern here relates to

the facts and whether the Trial Court's findings are sustainable.

■ Arson charges against the workers soon evaporated and Turnbow was no-billed. No relief is needed or available to protect against such charges as such. Of course, as a part of a plan of harassment the events could be significant. As to the charge for unlawful cohabitation against the Turnbows, the prosecution although unusual in the rarity of its exertion, was based on uncontradicted facts showing a violation to which the parties gave their imprimatur by the guilty plea. The burden was on the Government to show that this was discriminatory and flowed from the ulterior purpose of interfering with § 1971 voting rights. The trial Judge on an issue involving conflicting and subtle factors found to the contrary and on usual principles clearly erroneous there it ends. United States v. Leflore County, 5 Cir., 1967, 371 F.2d 368. Although the Moses affair seems more doubtful (see note 3, supra) in view of the dual elements of discrimination and voter-disruptive motivation, United States v. Leflore County, supra, the fact that the prosecution was perhaps factually unfounded, while a powerful circumstance, does not compel the conclusion that both of these elements were met. Indeed, the apparent indifference of Moses to his de novo appeal at least permitted the Judge to conclude that neither alone nor in conjunction with the other prosecutions did this cut much figure.[12]

Modified and as modified affirmed.

9. See Bell v. Southwell, 5 Cir., 1967, 376 F.2d 659, and n. 8.

10. See United States v. Ramsey, supra, 353 F.2d 650, 653, n. 7, 8; Bass v. State of Mississippi, 5 Cir., 1967, 381 F.2d 692 [July 31, 1967].

11. City of Greenwood v. Peacock, 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944; Student Non-Violent Coord. Comm. v. Smith, 5 Cir., 1967, 382 F.2d 9 [August 23, 1967], n. 8.

12. The Government's supplemental brief, although still urging that injunction

against the Sheriff who no longer plays a role in voter qualification and prosecuting officials is still warranted, informs us that by the Federal Voting Examiner process under the 1965 Act, 46% of the Negroes of Holmes County of voting age are now registered. And to the statute there is also a judicial decree which assures non-discriminatory exercise of the franchise by Negroes in Mississippi. United States v. Mississippi (3-Judge), S.D.Miss.1966, 256 F.Supp. 344, 349, Parts I and III; Bass v. Mississippi, supra.