**SHELLBURNE, INC., a corporation of the State of Delaware, Plaintiff,**

**v.**

**NEW CASTLE COUNTY, C. Douglas Buck, Jr., John D. Daniello, Joseph F. Dayton, Henry Folsom, Harrison E. Frohock, Thomas J. Kealy, Richard Sincock, John J. Smith, and Joseph F. Toner, constituting the County Council of New Castle County, John Autenrieth and Glen Schertz, Defendants.**

**Civ. A. No. 3537.**

United States District Court
D. Delaware.

Nov. 4, 1968.

Donald W. Booker, Booker, Leshem, Green & Shaffer, Wilmington, Del., for plaintiff.

Harvey B. Rubenstein, Asst. County Atty., Wilmington, Del., Clarence W. Taylor, Wilmington, Del., for defendants New Castle County and Members of County Council.

Joseph T. Walsh, Wilmington, Del., for defendants John Autenrieth and Glen Schertz.

OPINION

STEEL, District Judge:

Plaintiff brought this action under 42 U.S.C. §§ 1983 and 1985(3), known as the Civil Rights Act, for alleged violation of his civil rights under color of laws which are constitutionally invalid, and also under the common law to vindicate federally guaranteed rights. Jurisdiction exists under 28 U.S.C. § 1343 (3), (4) and purports to exist under § 1331(a).[1] The defendants are New Castle County, the individual members of the County Council, and two individuals, John Autenrieth and Glen Schertz. The conspiracy violation alleged under § 1985(3) is directed only against the last two defendants and is of no immediate concern, since they have filed answers to the amended complaint.[2] The matter is before the Court upon a motion by the County and by members of its Council to dismiss the complaint for failure to state a cause of action.

In essential part the complaint alleges:

In 1954 plaintiff owned 3.78 acres of land which was zoned C–1 for commercial use, and in 1964 received a building permit to build upon it. In January 1967, the New Castle County Council introduced ordinances designed to rezone plaintiff's property for residential use. On May 27, 1968, the County Council, following a hearing on the question, voted to rezone plaintiff's land to R–1–C for residential use. The complaint continues:

"The hearing scheduled above was held on May 27, 1968. No judicial proceedure [sic] or form was followed; no witnesses were sworn; no testimony was presented in behalf of the County by the County; no cross-examination was provided for counsel;

1. Actually it does not. The amended complaint fails to allege that the amount in controversy exceeds $10,000 exclusive of interest and costs. The discussion which follows will assume that an amendment to the complaint to correct this deficiency will be filed. Unless such corrective amendment to the complaint is filed within 15 days, the aspect of the claim under § 1331(a) will be dismissed.

2. The amended complaint will hereinafter be referred to as "the complaint".

the individuals were allowed to make unsworn and unsupported statements; and no proceedure [sic] of law was followed. The County Council rezoned the land without discussion or consideration, after attorneys representing the Civic Improvement Associations and other individuals appeared on behalf of those groups. No one appeared for the County Council itself, and no testimony was presented in behalf of the County Council, but the recommendation of the Planning Board was before the said County Council. (See Exhibit "C"). Said recommendation fails to cite any change in the conditions for the zoning of the area since the prior zoning in 1954, or any fraud or mistake in the said zoning of 1954."

The complaint further alleges:

The rezoning diminished the value of the land by a minimum of $200,000. The action of the County Council and laws under which it purported to act (9 Del.C. ch. 11, 13 and 26 and particularly § 2611) violated the Fifth and Fourteenth Amendments of the Constitution in that plaintiff was deprived of its property without due process, its property was taken without condemnation or just compensation, and that plaintiff was denied the equal protection of the law.

The complaint prays that the zoning ordinances by which its property was rezoned be adjudged null and void, that damages, including punitive damages, be assessed against defendants, and that the County and its agents and employees be enjoined from interfering with existing building permits or with the granting of a lawful building permit by the building inspector which will enable plaintiff to use his land for commercial purposes.[3]

The sole contention advanced by defendants under their motion to dismiss is that New Castle County and the members of the County Council are immune from suit under § 1983 of the Civil Rights Act or applicable common law under § 1331(a).

Demands for Relief Under § 1983 of the Civil Rights Act

(a) *Against New Castle County:*

42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

A municipal corporation is not a "person" within the meaning of § 1983 and therefore can not be held liable for damages under that section. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961); Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L. Ed.2d 741 (1961). The reasoning of the Court in Monroe v. Pape supports the conclusion that a county is likewise immune from liability for damages under § 1983. Sires v. Cole, 320 F.2d 877 (9th Cir. 1963); Garrison v. County of Bernalillo, 338 F.2d 1002 (10th Cir. 1964).

Plaintiff's contention that in view of Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), and United States v. Holmes County, 385 F.2d 145 (5th Cir. 1967), Monroe v. Pape, is no longer the law, can not be accepted. Neither the *Griffin* nor the *Holmes County* cases involved an action for damages or an interpretation of § 1983. The *dictum* in *Holmes County* that a county is a "person" within the mean-

---

3. The background of the controversy may be obtained from the decisions in state court actions reported in Shellburne, Inc. v. Roberts, 224 A.2d 250 (Supreme Ct. Del.1966); Shellburne, Inc. v. Roberts, 238 A.2d 331 (Supreme Ct.Del.1967); and Shellburne, Inc. v. Buck, 240 A.2d 757 (Supreme Ct.Del.1968).

ing of § 1983 is difficult to understand in view of the Monroe v. Pape decision.

██ Nor can injunctive relief be granted against a municipality under § 1983. See Monroe v. Pape, supra, 365 U.S. at 191 n. 50, 81 S.Ct. 473. This is because a municipality is not a "person" within the meaning of § 1983. Thus no relief can be granted against a municipality in a suit under § 1983. It follows by a parity of reasoning that no injunctive or declaratory relief can be granted against a county under that section.

(b) *Against Members of the County Council*

██ Defendant members of the County Council are legislators, being invested by the Delaware General Assembly with all the legislative powers of the County, except as otherwise provided by state law. 9 Del.C. § 1146. Zoning is a legislative function. Shellburne, Inc. v. Buck, 240 A.2d 757, 758 (Supreme Ct. Del.1968); Shellburne, Inc. v. Roberts, 238 A.2d 331 (Supreme Ct.Del.1967).

In Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the plaintiff sued under 8 U.S.C. §§ 43 and 47(3), now 42 U.S.C. §§ 1983, 1985(3), for damages, compensatory and punitive. He alleged that defendants, an investigating committee of the California Legislature, had deprived him of rights guaranteed under the federal constitution. The Supreme Court held that the legislators had no liability under the Civil Rights Act for the particular action taken. The Court emphasized the long history, both in England and the United States, of "[t]he privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings." 341 U.S. 372, 71 S.Ct. 786. The Court continued (341 U.S. at 377, 71 S.Ct. at 788):

"The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of the legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in Fletcher v. Peck, 6 Cranch, 87, 130, 3 L.Ed. 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned."

The Court held that the Civil Rights Act did not overturn the common law immunity of legislators. The Court acknowledged that there might be action by a legislature "of an extraordinary character" which might result in personal liability of legislators, but concluded that the defendants "were acting in a field where legislators traditionally have power to act, and * * * the statute of 1871 does not create civil liability for such conduct." 341 U.S. at 379, 71 S.Ct. at 789.

In Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), the plaintiffs, the Louisiana Civil Rights Organization and its Executive Director, brought an action under §§ 1983 and 1985(3) against the Chairman of the Internal Security Subcommittee of the United States Senate Judiciary Committee, among others. The plaintiffs alleged that the Chairman had entered into a conspiracy with state officials to seize plaintiffs' property and records. Plaintiffs asked for damages because of the seizure of their property. The Supreme Court affirmed the dismissal of the action. It said, 387 U.S. 84–85, 87 S.Ct. 1427:

"It is the purpose and office of the doctrine of legislative immunity, having its roots as it does in the Speech or Debate Clause of the Constitution, Kilbourn v. Thompson, 103 U.S. 168, 204, 26 L.Ed. 377 (1881), that legislators engaged 'in the sphere of legitimate legislative activity,' Tenney v.

Brandhove, supra, 341 U.S. at 376, 71 S.Ct. 783, should be protected not only from the consequences of litigation's results but also from the burden of defending themselves."

In Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Court held that a municipal judge enjoyed absolute immunity from suit under § 1983, and emphasized that Congress did not intend to abolish settled principles of immunity which had existed at common law.

Were defendants in the instant case members of the state legislature, the complaint in its damage aspect would be dismissable under the authority of Tenney v. Brandhove, supra, and further discussion would be unnecessary. Defendants are, however, members of a legislative body subordinate to the state legislature. While on its facts *Tenney* is not a four-square precedent, its *rationale* would seem to require a dismissal of the damage claim asserted under § 1983 against the members of the County Council.

■ Another approach supports this conclusion. In determining the liability of lower legislative bodies a Court is governed by principles of the common law. Under those principles the members of the County Council are entitled to claim an absolute immunity from personal liability for acts within the scope of their legislative discretion.

■ Admittedly, the Civil Rights Act creates a federal cause of action, and the limits of immunity of officials sued under it is a federal question which is governed by federal law. Cobb v. City of Malden, 202 F.2d 701, 703 (1st Cir. 1953). The federal limit of liability of public officials, however, is determinable by reference to principles of the common law with respect to immunities. See, e. g., Tenney v. Brandhove, supra; Dombrowski v. Eastland, supra; Pierson v. Ray, supra; Monroe v. Pape, supra; Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966) (en banc), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967); Cobb v. City of Malden, supra, 202 F.2d at 705–707 (concurring opinion, Magruder, J.). Unless the immunity granted by the state in which the federal court sits is generally not recognized by the common law, is patently unreasonable, or is violative of federal law or of the federal constitution, a federal court will usually tailor the immunity of officials sued under the Civil Rights Act to that afforded by the common law of the state. See Corbean v. Xenia City Bd. of Educ., 366 F.2d 480 (6th Cir. 1966);[4] Cobb v. City of Malden, supra, 202 F.2d at 703.

The Delaware Supreme Court has recently decided the very issue of immunity involved in the present case. Shellburne, Inc. v. Roberts, 238 A.2d 331 (Supreme Ct.Del.1967), held that a member of the Levy Court[5] has an absolute immunity from liability for his vote on a zoning ordinance. The Court stated, 238 A.2d at 337:

"Zoning is a legislative function. McQuail v. Shell Oil Company, 40 Del. Ch. 396, 183 A.2d 572 (1962). Accordingly, in casting his vote upon the Resolution at an official meeting of the Levy Court, Dayton was acting in his legislative capacity. Members of legislative bodies are not answerable in damages on account of their votes, cast in the exercise of discretion vested in them by virtue of their office. There is an absolute legislative immunity against personal liability in

4. In *Corbean*, supra, the Sixth Circuit stated that it would follow the common law rule of immunity of Ohio unless it violated federal law or the federal constitution. This seems a rejection of its earlier approach in Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958), in which it stated that the issue of immunity must be decided as a matter of "general law."

5. The legislative functions of the Levy Court have been transferred to the County Council in the reorganization of the New Castle County government. See 9 Del.C. ch. 11.

this regard, the motive underlying the legislative vote, good or bad, being wholly irrelevant. E. g., Village of Hicksville v. Blakeslee, 103 Ohio St. 508, 134 N.E. 445, 22 A.L.R. 119 (1921); Pawlowski v. Jenks, 115 Mich. 275, 73 N.W. 238 (1897); Gray, 'Private Wrongs of Public Servants,' 47 Cal.L.Rev. 303, 318 (1959). The necessity for a free and fearless independence of action on the part of members of legislative bodies, in the performance of their legislative duties, is the obvious basis for this absolute immunity."

See also The Alex Y. Hanna, 246 F. 157 (D.Del.1917) (discussing Delaware law); Banks v. Downing, 7 Terry 127, 78 A.2d 865 (Super.Ct.Del.1951); Carter v. Wilds, 8 Houst. 14, 31 A. 715 (Super.Ct.Del.1887); cf. Shellhorn & Hill, Inc. v. State, 187 A.2d 71 (Supreme Ct.Del.1962); Flait v. Mayor and Council of Wilmington, 9 Terry 89, 97 A.2d 545 (Supreme Ct.Del.1953).

The Delaware rule of absolute immunity of County Council members acting within the scope of their legislative function is the prevailing rule. Prosser on Torts 1014 (3d ed. 1964). See also cases cited in 37 Am.Jur., Municipal Corporations §§ 71, 264; 20 C.J.S. Counties § 97; Annot., 22 A.L.R. 125.

The views of Judge Magruder in his concurring opinion in Cobb v. City of Malden, 202 F.2d 701, 705–707 (1st Cir. 1953) are inconsistent with the common law principle of absolute immunity of members of lower legislative bodies for legislative acts recognized in Delaware and in most other jurisdictions. In Cobb, the First Circuit held that a municipality could not be sued under the Civil Rights Act, but that the complaint stated a cause of action against the individual municipal officers including the Board of Aldermen and Common Council acting in their legislative capacity. The Court stated that it was following the law of Massachusetts as to the limits of official liability. 202 F.2d at 703. Judge Magruder, in a concurring opinion, attempted to distinguish Tenney v. Brandhove, supra. He stated that there had been no such general and unquestioned recognition at common law of an absolute immunity from civil liability by members of city councils and other subordinate legislative bodies comparable to the complete immunity enjoyed by members of state legislatures for acts done in their official capacity. He pointed out that members of lower legislative bodies have only a qualified privilege in the area of libel and slander, which may be forfeited if the defamation is not in good faith or published for an improper purpose. He concluded, "I know of no reason why their immunity from liability for harms other than defamation should be any wider." 202 F.2d at 706.

Judge Magruder's analogy between liability for defamation and for legislative acts is not persuasive. The reason that members of lower legislative bodies have wider immunity from liability under the Civil Rights Act for their legislative actions than under the law of defamation for their statements is that the common law provides this wider immunity. It is true that national[6] and state[7] legislators have an absolute im-

6. U.S.Const. art. 1, § 6; Cochran v. Couzens, 59 App.D.C. 374, 42 F.2d 783, cert. denied, 282 U.S. 874, 51 S.Ct. 79, 75 L.Ed. 772 (1930); see Tenney v. Brandhove, supra; Dombrowski v. Eastland, supra; Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1881); United States v. Johnson, 337 F.2d 180 (4th Cir. 1964), aff'd, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), cert. denied sub nom. Eldin v. United States,

385 U.S. 846, 87 S.Ct. 44, 17 L.Ed.2d 77 (1966); Restatement of Torts § 590; Prosser on Torts 800–01.

7. See Tenney v. Brandhove, supra, 341 U.S. at 375 n. 5, 71 S.Ct. 783, 95 L.Ed. 1019 (state constitutional provisions); 1 Del.C., art. 2, § 13 (Del.Constitution), Del.C.Ann.; see Short v. News-Journal, 205 A.2d 6, 8 (Super.Ct.Del.1965), aff'd, 212 A.2d 718 (Supreme Ct.Del.1965); McClendon v. Coverdale, 203 A.2d 815

munity for defamation, and that members of lower legislative bodies, including those of Delaware usually have a qualified immunity for defamation.[8] Despite this qualified immunity for defamation, the law generally gives members of lower legislative bodies, including those of Delaware, the same absolute immunity for legislative actions as have national and state legislators. See discussion pp. 242–243, supra.

■ The Court holds, therefore, that members of the County Council are absolutely immune from personal liability under § 1983 when they act within the scope of their legislative function.

This conclusion is supported, we believe, by the reasoning of the Third Circuit in Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966) (en banc), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). There the Court held that a county prosecutor was immune from liability under § 1983 of the Civil Rights Act unless he was acting clearly outside his jurisdiction. It stated that the duties of a prosecuting attorney acting in his official capacity are sufficiently judicial as to cloak him with the same immunity as is afforded judges. The traditional arguments in favor of immunity were held applicable to the prosecuting attorney, and are equally applicable to immunizing a county council member from liability for acts performed within the scope of his legislative duties.[9]

■ It is clear that the members of the County Council were acting within

the scope of legitimate legislative activity when they voted to rezone plaintiff's property and no liability can be imposed upon them under § 1983 for doing so.

■ However, suits may be maintained against state officers for declaratory and injunctive relief under the Civil Rights Act. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Jordan v. Hutcheson, 323 F.2d 597 (4th Cir. 1963); Morrison v. Davis, 252 F.2d 102 (5th Cir. 1958), cert. denied, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed. 2d 1075, reh. denied, 357 U.S. 944, 78 S. Ct. 1383, 2 L.Ed.2d 1558 (1958); Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953); Bush v. Orleans Parish School Bd., 138 F.Supp. 337 (E.D.La.1956), aff'd, 242 F.2d 156 (5th Cir. 1957), cert. denied, 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957); Browder v. Gayle, 142 F.Supp. 707 (M.D.Ala.1956), aff'd without opinion, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (1956); see Shellburne, Inc. v. Roberts, supra, 238 A.2d at 337. Accordingly, if the facts justify it, this Court may grant declaratory and injunctive relief against the members of the County Council under § 1983.

Demands for Relief Independent of
§ 1983 of the Civil Rights Act

(a) *Against New Castle County.* In addition to asserting a right to relief under § 1983 of the Civil Rights Act, plaintiff also invokes the power of this Court

---

(Super.Ct.Del.1964); Restatement of Torts § 590; Prosser on Torts 800–01.

8. Restatement of Torts § 590, comment c; 40 A.L.R.2d 941; Prosser on Torts 800–01; McClendon v. Coverdale, 203 A. 2d 815 (Super.Ct.Del.1964); see Short v. News-Journal, 205 A.2d 6, 8 (Super. Ct.Del.1965), aff'd, 212 A.2d 718 (Supreme Ct.Del.1965).

9. These considerations are (361 F.2d at 590 n. 9): "'(1) the danger of influencing public officials by threat of a law suit; (2) the deterrent effect of potential liability on men who are considering

entering public life; (3) the drain on the valuable time of the official caused by insubstantial suits [which would require inordinate private record keeping, Bradley v. Fisher, 80 U.S. (13 Wall.) 335, at 349, 20 L.Ed. 646]; (4) the unfairness of subjecting officials to liability for the acts of their subordinates; (5) the theory that the official owes a duty to the public and not to the individual; (6) the feeling that the ballot and the formal removal proceeding are more appropriate ways to enforce honesty and efficiency. * * *' Note, 66 Harv.L. Rev. 1285, 1295 n. 54 (1953)."

under 28 U.S.C. § 1331(a),[10] independent of the Civil Rights Act, to redress alleged violations by defendants of its constitutional rights under the Fifth and Fourteenth Amendments.

The Fourteenth Amendment, § 1, provides in part:

"No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

■ The Fifth Amendment provides in part that private property shall not "be taken for public use, without just compensation." While this portion of the Fifth Amendment, standing alone, restricts action only by the Federal Government, Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158, 17 S.Ct. 56, 41 L.Ed. 369 (1896); Nichols on Eminent Domain §§ 4.1, 4.8 (3d ed. 1964), the Fourteenth Amendment's due process clause has been interpreted to impose on the states the same obligation imposed by the Fifth Amendment. West v. Chesapeake & Potomac Tel. Co., 295 U.S. 662, 55 S.Ct. 894, 79 L.Ed. 1640 (1935); Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); City of Cincinnati v. Louisville & N.R.R. Co., 223 U.S. 390, 32 S.Ct. 267, 56 L.Ed. 481 (1912); Chicago, B. & Q. R.R. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897); Nichols on Eminent Domain § 4.8 (3d ed. 1964).

■ The Fourteenth Amendment is directed against the "States" taking

the proscribed actions which the Amendment specifies. It has been held that actions taken by any state instrumentality, including municipalities, counties and county officials, in violation of the prohibitions of the Fourteenth Amendment subject such instrumentalities to suit for injunctive or declaratory relief. Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964);[11] Burton v. Wilmington Parking Auth., 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Commonwealth of Pennsylvania v. Board of Directors of City Trusts, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104, reh. denied, 310 U.S. 657, 60 S.Ct. 1072, 84 L.Ed. 1420 (1940); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Wilcox v. City of Pittsburgh, 121 F.2d 835 (3d Cir. 1941). The Courts have often declared ordinances, including zoning ordinances, enacted by State instrumentalities to be violative of the Fourteenth Amendment and have enjoined their enforcement. Staub v. City of Baxley, supra; Carlson v. People of State of California, supra; Lovell v. City of Griffin, supra; City of Richmond v. Deans, 281 U.S. 704, 50 S.Ct. 407, 74 L.Ed. 1128 (1930); Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917); Wilcox v. City of Pittsburgh, supra.

■ (b) *Against Members of the County Council.* For the reasons stated in the preceding section, the members of

10. 28 U.S.C. § 1331(a): "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

11. "We have no doubt of the power of the court to give this relief to enforce

discontinuance of the county's racially discriminatory practices. It has long been established that actions against a county can be maintained in United States courts in order to vindicate federally guaranteed rights." Griffin v. County School Bd. of Prince Edward County, supra, 377 U.S. at 232–233, 84 S.Ct. at 1234.

**246**

the County Council may be sued for declaratory and injunctive relief for alleged violations of plaintiff's rights guaranteed by the Fourteenth Amendment.

### Conclusion

From what has been said, it is clear that (1) neither New Castle County nor the members of the County Council are immune from suit for the injunctive and declaratory relief which plaintiff seeks; and (2) both the County and the members of the County Council are immune from liability in damages under § 1983 of the Civil Rights Act. Whether, independent of the Civil Rights Act, the County or members of the County Council can be held liable for damages for the alleged violation of plaintiff's constitutional rights need not be decided at this juncture, since in any event defendants' motion to dismiss must be denied.

It should be emphasized, however, that it is not the Court's intention to determine at this point whether a good substantive cause of action (apart from the immunity question) has been alleged, or whether any of the decisions of the Supreme Court of Delaware in the *Shellburne* cases referred to in footnote 3 provide a basis for the defense of res judicata or collateral estoppel by judgment. Neither of these points have been briefed by the parties and this Court does not have before it the record in the State Court *Shellburne* cases which is a prerequisite to an adjudication of the effect of those decisions.

 Accordingly, it appears to be in the interest of expediting a determination by this Court of the controversy which has already given rise to protracted litigation to defer a determination of the validity of the cause of action alleged and of the effect of the State Court judgments until the time of trial. This deferral of decision is authorized by Fed.R.Civ.P. 12(d).

Let an order consistent with this opinion be submitted.