**Richard BASS, Appellant,**

v.

**STATE OF MISSISSIPPI, Appellee.**

No. 24029.

United States Court of Appeals
Fifth Circuit.
July 31, 1967.

Alvin J. Bronstein, Jackson, Miss., Melvin L. Wulf, New York City, for appellant.

Will S. Wells, Asst. Atty. Gen., Jackson, Miss., for appellee.

Before BROWN, Chief Judge, BELL, Circuit Judge, and BREWSTER, District Judge.

JOHN R. BROWN, Chief Judge.

Nominally what is involved here is whether the trial of a Mississippi rape case should be removed to the Federal District Court under 28 U.S.C.A. § 1443 (1).[1] But underlying this is the serious question of whether the Constitution condemns the Mississippi statutory exclusion of women as a class from service as jurors.

Bass, a Negro, was indicted, tried and convicted in Warren County, Mississippi, for rape and sentenced to death. On February 7, 1966, however, the Supreme Court of Mississippi reversed his conviction on the ground, among others, that Warren County systematically excluded Negroes from juries, Grand and Petit. Bass v. State, 1966, 254 Miss. 723, 182 So.2d 591, 183 So.2d 483. On March 14, 1966, he was reindicted by the Grand Jury. By motion and amended motion, Bass moved to quash the new indictment on the ground that Negroes had been systematically excluded from this Grand Jury and the further one that the Mississippi statute specifically excludes women as a class from jury service. These motions were presented on March 17, 1966, and after hearing thereon were denied. Trial, first fixed for March 28, 1966, was continued until the July 1966 term of the Circuit Court. Prior to its resetting Bass filed the instant petition for removal on June 15, 1966, which was dismissed without an evidential hearing July 8, 1966, by the Federal District Court on the ground that the verified petition stated "no fact or circumstance to vest this Court with Jurisdiction"[2] and the case remanded to the Circuit Court of Warren County, Mississippi. Subsequently, the District Court stayed the order of remand pending the outcome of this appeal.

I.

Race Exclusion

Besides the claim of unconstitutional statutory exclusion of women as jurors, the petition for removal set forth in considerable, but abbreviated, detail the facts as to the claim of systematic exclusion of Negroes. In the view we take of this, we find it unnecessary to set out or summarize the statistics. The theory pursued here is that since the lists of jurors from which Grand and Petit jurors are drawn are made up from the role of qualified electors,[3] the source is constitutionally "infected." This is so because the electors were, in turn, qualified pursuant to then existing sections[4] of the Election Code which violate the Fourteenth and Fifteenth Amendments under United States v. Mississippi, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717, and United States v. Louisiana, 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 by reason of the "read and interpret" requirement.

On this structure it is further contended that, because the infirmity inheres in the *statutory* scheme for voter qualification, the denial of equal civil rights to a jury free from exclusion by reason of

1. Although (2) is not involved, we set out the full section for completeness:
   § 1443. Civil rights cases
   "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
   "(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
   "(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

2. In his order Judge Cox cited City of Greenwood, Miss. v. Peacock, June 20, 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944; and our recent decision Archie v. State of Mississippi, July 7, 1966, 5 Cir., 362 F.2d 1012.

3. Miss.Code Ann. §§ 1762, 1762–03 (1964 Supp.).

4. Miss.Code Ann. §§ 3212, 3212.5, 3212.7, 3213, 3235 (1964 Supp.), in effect on January 1, 1965.

race makes this case one for removal under Strauder v. State of West Virginia, 1880, 100 U.S. 303, 25 L.Ed. 664 rather than Virginia v. Rives, 1880, 100 U.S. 313, 25 L.Ed. 667, involving discrimination from maladministration, not statutory mandate, both of which cases were substantially reaffirmed in State of Georgia v. Rachel, 1966, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925.

■ We reject this theory. In doing so, we assume, without deciding, that despite the Supreme Court's disclaimer of a determination that the Mississippi voter qualification statutes were facially unconstitutional, United States v. Mississippi, supra, 380 U.S. 128, 143, 85 S.Ct. 808, the decision of the companion case, United States v. Louisiana, supra, foreshadows a like, ultimate declaration as to Mississippi. Despite this assumption, this is not enough to obtain removal to the Federal Court. For Georgia v. Rachel, supra, put new emphasis on the dual standard as the insertion of brackets [] reveals. "Section 1443(1) entitles the defendants to remove these prosecutions to the Federal Court only if they meet both requirements of that subsection. They must show both that [1] the right upon which they rely is a 'right under any law providing for * * * equal civil rights,' and that [2] they are 'denied or cannot enforce' that right in the courts of [the State]." 384 U.S. 780, at 788, 86 S.Ct. 1783, at 1788, 16 L.Ed.2d 925, at 931.

■ This is of great importance. For although the operation of the inter-related voter qualification statute and jury qualification statute might work to deny the right to a jury selected free of racially discriminatory exclusion, the right here sought is the right to that sort of trial. The right at issue is not the right to vote or register to vote. The existence of the voter qualifications statute does not therefore of itself deny this right. Of course, *Rachel,* reiterating the standard that removal is warranted only if by reference to a law of general application it can be predicted that the rights will be denied or cannot be en-forced, goes on to say, "A state statute authorizing the denial affords an ample basis for such a prediction." 384 U.S. 780, at 800, 86 S.Ct. at 1794, 16 L.Ed.2d at 938. But we think that relates to a state statute which denies the right asserted and not an antecedent statute which might have that operative effect. Its operative effect, decisive as it might be, does not eliminate the great likelihood that the state courts could and would afford corrective action. It is entirely possible that the state courts would recognize that the mere existence of the incorporated statutory standard does not foreclose judicial inquiry into, and determination of, whether the immediate right asserted has been constitutionally satisfied.

■ Once that view is taken, neither from the face of these statutes nor from administrative application of them is there the "firm prediction that the defendant would be 'denied or cannot enforce' the specified federal * * * ['right' to a constitutionally selected jury] in the state court." 384 U.S. at 804, 86 S.Ct. at 1796, 16 L.Ed.2d at 940. There is, first, nothing in the voter registration statutes, even if assumed to be unconstitutional, which denies to the Mississippi Courts the power to inquire into whether the jury under scrutiny was subject to the vice of unconstitutional racial exclusion, whether attributed to the deficiencies in the voter registration rolls or from other causes. To the contrary, the action of the Supreme Court of Mississippi in this very case demonstrates that that Court has and will vindicate the federally guaranteed right of constitutionally selected juries. And as they had done just previously in Harper v. State, 1965, 251 Miss. 699, 171 So.2d 129, the existence of the voter registration laws did not handicap the Supreme Court of Mississippi either in reaching the result of reversal in a spectacular capital case or in delivering the admonition to the Mississippi trial courts and prosecuting officers in these strong terms. "Our courts and officials charged with the duty of selecting jurors

should heed these laws, if we hope to continue to handle violations of our laws. Our courts, whenever facts such as these are shown, can do nothing except reverse." 182 So.2d 591, 595. If the record either made or to be made in the State trial court proves the truth of the charge that even though five Negroes were on the Grand Jury which reindicted Bass, it came from a larger list which was constitutionally infected, Davis v. Davis, 5 Cir., 1966, 361 F.2d 770, 775 (en banc),[5] the "firm prediction", 384 U.S. 780, at 804, 86 S.Ct. at 1796, 16 L.Ed.2d 925 at 938 and 940, is not that the equal civil rights will be denied or unenforced. To the contrary, the Mississippi Court will, as it has before, vindicate that right without equivocation.

This forecast is all the more certain from the intervening sweeping changes in Mississippi voter registration laws following ratification of the Mississippi Constitutional amendment on August 17, 1965. The statutory amendments did away with the elaborate registration application and the read and understand tests. To this must also be added the Voting Rights Act of 1965, 79 Stat. 437, 42 U.S.C.A. § 1973 et seq., which eliminated the remaining "read and write" test, and provided for voting registrars in some 18 Mississippi counties including Warren County followed subsequently by the declaratory order requiring state election officials to treat holders of Certificates of Eligibility as qualified Mis-

sissippi voters. United States v. State of Mississippi, (3-Judge), S.D.Miss., 1966, 256 F.Supp. 344, 349, parts I and III, following remand, United States v. Mississippi, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717.

With these legislative changes and the passage of time, it is almost a certainty that the voter registration rolls have been markedly expanded.[6] The "universe" from which the list of jurors for service as petit jurors in Bass' forthcoming trial will undoubtedly include a much larger number of Negroes and in any event will be free from the statutorily imposed discriminatory features of the former law. Whether the resulting jury list does or does not then satisfy federally imposed constitutional standards (see note 5, supra) will depend therefore almost altogether on factors other than the voter registration system. As far as the present reindictment is concerned, these intervening occurrences read in the light of the strong admonition of the Mississippi Supreme Court may lead the authorities to conclude that to eliminate all doubts concerning the constitutional validity of the Grand Jury of March 1966, a further new indictment should be sought before the current Grand Jury drawn on post-1965-1966 standards. Cf. Brooks v. Beto, supra, 366 F.2d at 1, n. 1.

The District Court was therefore correct in denying the right of removal on the ground of racial discrimination.

---

5. This was one of seven cases on jury race exclusion-inclusion heard en banc by the Court.

   The other en banc cases include Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34; Jackson v. United States, 5 Cir., 1966, 366 F.2d 34; Scott v. Walker, 5 Cir., 1966, 358 F.2d 561; Billingsley v. Clayton, 5 Cir., 1966, 359 F.2d 13; Brooks v. Beto, 5 Cir., 1966, 366 F.2d 1; Labat v. Bennett, 5 Cir., 1966, 365 F. 2d 698.

6. While the registration statistics by county are not published in any formal report by the Civil Service Commission, we understand that as of June 1967 the proof, if offered, would show the following:

| Warren County | White | Negro |
|---|---|---|
| Registered voters as of December 1964 | 11654 | 2433 |
| Registered by local officials Dec. 1964 through May 1967 * | 1508 | 2422 |
| Registered by Federal Examiner | 27 | 1180 |
| Cumulative totals | 13189 | 6035 |
| Percent of total voting age population | 97.5% | 56.3% |

* These figures do not include 117 registered voters who were racially unidentifiable. Nor could it be determined from the statistics how many were registered between December 1964 and July 1965 when the Voting Rights Act was passed.

City of Greenwood v. Peacock, 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944.

## II.

### Exclusion of Women

Quite different considerations face us with respect to the exclusion of women as jurors. There are no factual problems. This is a matter of statute which, affirmatively defining those eligible, negatively excludes women as a class.[7]

In testing removability we assume, without deciding, that on the intrinsic merits we would align ourselves with White v. Crook, M.D.Ala., 1966, 251 F.Supp. 401 (3-Judge), holding unconstitutional a like exclusionary statute of Alabama.[8] In so doing, we would have to recognize, as did that Court, that this would be without a deliverance from the Supreme Court, indeed nominally in the face of that Court's own language suggesting an opposite result. These cases[9] are reviewed extensively in State v. Hall, 1966, Miss., 187 So.2d 861, in which, for Mississippi, the Mississippi Supreme Court expressly declines to follow White v. Crook. It is true that *Strauder* spoke in pretty positive terms. A State may, the Court declared, "confine the selection to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications. We do not believe the Fourteenth Amendment was ever intended to prohibit this." 100 U.S. 303, 310. But in its most recent action, *Hoyt*, the Court characterized the earlier pronouncement as "this Court's dictum in Strauder * * *", 368 U.S. 57, 59–62, 82 S.Ct. 161. Similar views were expressed in *Fay*. But *Fay* was heavily laden with expressed doubts as to the standing of the defendants, not being women, to raise the issue, a matter upon which this Court has no doubts in testing the constitutional validity of a State Court jury, Grand or Petit. Labat v. Bennett, 5 Cir., 1966, 365 F.2d 698 (en banc) (see note 5, supra). But in the light of Hernandez v. State of Texas, 1954, 347 U.S. 475, 478, 74 S.Ct. 667, 98 L.Ed. 866, and the Court's cautious language and careful restriction to the narrowest possible issues in *Hoyt*, there is enough basis for an arguendo assumption that when this issue is directly presented the Supreme Court would hold that an absolute statutory exclusion—not exemption—of women as jurors is unconstitutional.

■ We may also assume that faced with such prediction, this Court, too, would have a duty to vindicate constitutional rights without waiting for a formal overruling of decision, abandonment of dicta, or the like. See Browder v. Gayle, D.C.Ala., (3–Judge), 1956, 142 F.Supp. 707, 716 & n. 14; Gold v. DiCarlo, S.D.N.Y. (3–Judge), 1964, 235 F. Supp. 817, 819 (Kaufman, J.), aff'd, 1965, 380 U.S. 520, 85 S.Ct. 1332, 14 L.Ed.2d 266; Columbia General Invest. Corp. v. Securities & Exchange Comm'n, 5 Cir., 1959, 265 F.2d 559, 562, n. 8. But none of these assumptions carry the day for § 1443(1) removal.

This is so because, even though, as in White v. Crook, a Federal Court might grant an injunction against the future enforcement of the statutory exclusion of women as jurors, see City of Greenwood v. Peacock, supra, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d at pp. 957–958 the case is not for removal under § 1443 (1) for the very simple reason that as

---

7. Miss.Code Ann. § 1762 (1964 Supp.) "Every male citizen not under the age of twenty-one (21) years, who is * * * a qualified elector * * *" is a competent juror.

8. Ala.Code Tit. 30, § 21 (1958). "Qualifications of persons on jury roll.—The jury commission shall place on the jury roll and in the jury box the names of all male citizens of the county * * *." See 251 F.Supp. 401, 408, n. 14. It is there

pointed out that at that time only three states—Alabama, Mississippi and South Carolina—totally bar women from jury service.

9. It discusses primarily Strauder v. State of West Virginia, 1879, 100 U.S. 303, 25 L.Ed. 664; Fay v. People of State of New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Hoyt v. State of Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed. 2d 118.

defined in *Rachel,* the right here asserted —i. e., to be indicted and tried by a jury from which women as a class have not been excluded—does not meet the test. And this is so even though it literally fits the "denied or cannot enforce" standard articulated in *Peacock.* "Under § 1443 (1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." 384 U.S. 808, at 828, 86 S.Ct. at 1812, 16 L.Ed.2d at 957. For the Mississippi Supreme Court's opinion in State v. Hall, supra, indicates its recent and positive views on the constitutional question. And on the hypothesis that one is entitled under the Federal Constitution to a trial from which women have not been excluded as a class, it is the very act of beginning that trial, no matter how it comes out, nor what its result may be on appeal, that denies this right. The trouble is the "right" is not of the right kind.

The statutory phrase "any law providing for * * * equal civil rights", so *Rachel* declares, "must be construed to mean any law providing for specific civil rights stated in terms of *racial equality.*" (Emphasis added.) And as though written for the claims here asserted, the Court went on to state that "the defendants' broad contentions under the * * * Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands." 384 U.S. at 792, 86 S.Ct. at 1790, 16 L.Ed.2d at 933–934. There is no Federal statute [10] covering the "right" here asserted meeting this test.[11]

The result is that the District Court was correct as to both attacks. Removal was properly denied and the cause is remanded.

Affirmed.

---

10. Of course there is a federal statute which confers the right to have jurors selected without discrimination on the ground of race. 42 U.S.C.A. § 1981; Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664. This meets both elements of the *Rachel* test of a "law providing for [1] specific civil rights stated [2] in terms of *racial* equality." (Emphasis added.) 384 U.S. at 792, 86 S.Ct. at 1790, 16 L.Ed.2d at 933. Sex, however, transcends race. Even a specific inclusion of sex by amendment to § 1981 would not meet element [2] of *Rachel,* although Congress could, we assume, permit removal in such cases by a legislative overruling of *Rachel* or an implied amendment to § 1443(1). Equality of sex may, of course be a "civil right." See 42 U.S.C.A. § 2000e–2(a) making discrimination be-cause of sex an unlawful employment practice.

11. For a discussion of the effect of the Court's recent holdings in *Rachel* and *Peacock,* see the Civil Rights Removal Statute Revisited, 1967 Duke L.J. 136. Analysis of the meaning of the statutory words "any law" is given id. at 165–71. An excellent pre-*Rachel-Peacock* discussion and analysis of the history and scope of § 1443 removal is found in Amsterdam, Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Removal and Habeas Corpus Jurisdiction to Abort State Court Trial, 113 U.Pa.L.Rev. 793 (1965). It evoked a similar comment by Justice Stewart, 384 U.S. at 786 n. 4, 86 S.Ct. at 1786 n. 4, 16 L.Ed.2d at 930 n. 4.