Vernon John **NAIMASTER**

v.

**NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, a body corporate, Lillie M. Jackson and Juanita Jackson Mitchell.**

**Civ. No. 17898.**

United States District Court
D. Maryland.

March 5, 1969.

---

W. Giles Parker and M. Jacqueline Mc-Curdy, Towson, Md., and Alan H. Murrell, Baltimore, Md., for plaintiff.

Clarence M. Mitchell, Jr., and Gerald A. Smith, Baltimore, Md., for defendants.

THOMSEN, Chief Judge.

Plaintiff (Naimaster) seeks remand of this civil action to the Circuit Court for Baltimore County, from which it was removed by defendants, who claim the right of removal under 28 U.S.C. §§ 1443 and 1446, 42 U.S.C. §§ 1981, 1983 and 1985, and the First and Fourteenth Amendments. The defendants are the National Association for the Advancement of Colored People (NAACP), Lillie M. Jackson, President of the Baltimore Branch, NAACP, a resident of Baltimore City,

and Juanita Jackson Mitchell, an attorney who lives and has her office in Baltimore City.

The declaration filed in the State court by plaintiff (Naimaster) contains four counts. Count I (for libel) alleges that Naimaster, a citizen and resident of Baltimore County, had for some twelve years before November 10, 1965, been employed by the Baltimore Transit Company as a bus driver; that on that date defendants "caused to be published by means of certain telegrams, copies of which were given to the press, certain words pertaining to the Plaintiff, falsely and maliciously in manner following:

"1965 Nov 10   PM 5 09

Phillip Sachs Chairman, Metropolitan Transit Authority
10 Light St Balto 2

Baltimore Branch NAACP protests the racially inflammatory public utterances of a Baltimore Transit bus driver, Vernon Naimaster, who is Acting Grand Dragon for the Ku Klux Klan in the State of Maryland. His public pronouncements against Negroes and Jews make him totally unfit for employment in this public utility. Colored employees of the Transit Company further protest that he is continuing to make these utterances on the company grounds in the eastern division where he is employed. We would appreciate your immediate investigation and action on this urgent matter

Dr Lillie M Jackson Pres Baltimore Branch NAACP."

A similar telegram was sent to the president of the Baltimore Transit Company. Plaintiff alleges that the "representations" in the telegrams reflected on his moral character and standing in the community, in that they imputed conduct tending to degrade him and expose him to public hatred, contempt and ridicule, aversion and disgrace, and were calculated and intended to produce an evil opinion of him in the minds of right-thinking persons and deprive him of his employment; whereas, plaintiff alleges he has always been a law-abiding, decent and reputable citizen, has never been accused or convicted of any crime, has enjoyed a good reputation as a leader in his community, and that the publications were falsely and maliciously circulated and published by defendants with the intent of damaging him. Plaintiff does not deny that he was the Acting Grand Dragon of the Ku Klux Klan.

Count II (for invasion of privacy) re-alleges the facts in Count I, adding that Dr. Jackson and Mrs. Mitchell participated in other actions as individuals and as agents, servants or members of the NAACP, furthering the malicious intent to damage plaintiff, by making statements to the press, "testifying at hearings in connection with the Plaintiff's employment," and otherwise.

Count III (for malicious and intentional interference with plaintiff's contract of employment) and Count IV (for conspiracy) are based upon the same allegations, plus an allegation in Count IV that defendants conspired together to injure plaintiff and cause him damage and loss. Plaintiff claims actual and exemplary or punitive damages in the amount of $200,000, and has elected a jury trial.

Defendants filed a timely petition for removal and a motion to dismiss the action, contending that it was not properly brought in Baltimore County.

The petition for removal alleges the well-known history and purposes of the NAACP, the responsibilities of the Metropolitan Transit Authority under Maryland law, and the activities of Naimaster in the Ku Klux Klan, including statements made by him on television and radio and reported in the press. The petition further alleges that many persons, including passengers and employees of the Baltimore Transit Co., got in touch with Dr. Jackson and Mrs. Mitchell, both of whom have long been active in furthering the purposes of the NAACP, expressing fear and concern as a result of alleged acts and statements by plaintiff; and that Dr. Jackson, as president of the Baltimore Branch, NAACP, sent the telegram set out in the declaration. On November 11, 1965, the Baltimore Trans-

it Company discharged Naimaster "for actions which have resulted in turmoil, dissension and apprehension among our employees" and for violating the company rule that employees "shall foster friendly relations between the company and the general public." The petition also alleges that pursuant to the terms of a collective bargaining agreement, an arbitration hearing was held in Baltimore City on March 11, 1966, at which Dr. Jackson appeared and Mrs. Mitchell testified. The discharge was upheld by the arbitrator.

■ The petition asserts several grounds for removal: first, that this suit "stems from the exercise by the defendants-petitioners of their federal statutory right to give evidence," conferred by the Civil Rights Act of 1866, 42 U.S.C. § 1981. Defendants cite particularly the allegations of Count II of the declaration, summarized above.[1] Defendants claim that the "mere pendency of the suit indicates defendants-petitioners are not free from harassment and the threat of pecuniary loss for engaging in a protected activity specifically conferred under a Federal statute"; that the "burden of having to defend against this suit" is a denial of their rights under the Act of 1866; and that "[b]y reason of the foregoing defendants-petitioners are denied their rights in the courts of the State of Maryland."

Whatever effect these allegations may have as a defense to the prosecution of this suit, they do not justify removal of the case to a federal court under 28 U.S.C. § 1443.[2] The bounds of that section, as delineated in Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), and City of Greenwood, Mississippi v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), are so restricted that:

"It is *not* enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be 'denied or cannot enforce in the courts' of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court. Georgia v. Rachel, ante; Strauder v. West Virginia, 100 U.S. 303 [25 L.Ed. 664]." 384 U.S. 827–828, 86 S.Ct. at 1812.

■ Assuming, as petitioners argue, that the giving of testimony at an arbitration hearing is covered by 42 U.S.

1. Although this contention applies only to Count II, if defendants have a right to remove one count to a federal court, they may remove the entire action.

2. Section 1443 provides:
"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

C. § 1981,[3] which provides for equal civil rights within the meaning of 28 U.S.C. § 1443(1), no federal law confers immunity from civil suit in a State court based upon the exercise of that right. Defendants have cited no law analogous to the Public Accommodations sections of the Civil Rights Act of 1964 or the Voting Rights Act of 1965 protecting them from coercion, intimidation, or punishment for the exercise of their right to give evidence.[4] The mere filing and pendency of this action in the State court does not justify a "firm prediction," equivalent to a discriminatory State enactment, that the rights of defendants will be denied in the State court. Such a "firm prediction" is a prerequisite of removal. Georgia v. Rachel, 384 U.S. at 804, 86 S.Ct. 1783, 16 L.Ed.2d 925; City of Greenwood, Mississippi v. Peacock, 384 U.S. at 824–828, 86 S.Ct. 1800, 16 L.Ed.2d 944.

■ Nor is removal justified, as defendants contend, because the Maryland courts have held that malicious interference with business or employment is actionable and that false and defamatory statements tending to injure one in his business are actionable per se. Petitioners cite no case or statute showing that Maryland courts will ignore any defenses defendants may have,[5] including any rights they may have under 42 U.S.C. § 1981.

■■ The petition also asserts that Baltimore County is prejudiced against Negroes, who constitute only 2% of the total population, and that defendants

therefore cannot enforce the rights given them by 42 U.S.C. § 1981. In their memorandum defendants argue that the jury selection procedures of Baltimore County violate § 1981 and the Equal Protection Clause of the Fourteenth Amendment, thus creating grounds for removal under § 1443.

Again, *Rachel* sets the guidelines for decision. After discussing Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664, Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667, and other cases dealing with racial discrimination in the selection of juries, the opinion in *Rachel* states:

> "*Strauder* and *Rives* thus teach that removal is not warranted by an assertion that a denial of rights of equality may take place and go uncorrected at trial. Removal is warranted only if it can be predicted by reference to a law of general application that the defendant will be denied or cannot enforce the specified federal rights in the state courts." 384 U.S. at 800, 86 S.Ct. at 1794.

Defendants' memorandum states, without supporting affidavit, that in Baltimore County jury panels are selected on a proportionate basis from election districts, using voter lists with racial identification; that the absence of Negroes from any of the election districts is attributable to a policy of housing segregation, originally sanctioned and fostered by the federal government and continued through various real estate arrangements; and that in an attempt to include some Negroes on juries, the jury com-

---

3. Section 1981 provides in pertinent part:
   "All persons * * * shall have the same right * * * [to] give evidence * * * as is enjoyed by white citizens * * *."

4. Public Accommodations Provision, § 203, Civil Rights Act of 1964, 42 U.S.C. § 2000a–2; Achtenberg v. Mississippi, 393 F.2d 468 (5 Cir. 1968); Wyche v. Louisiana, 394 F.2d 927 (5 Cir. 1967); § 11(b), Voting Rights Act of 1965, 42 U.S.C. § 1973i(b); Whatley v. City of Vidalia, 399 F.2d 521 (5 Cir. 1968); Davis v. Alabama, 399 F.2d 527 (5 Cir. 1968).

5. Defendants refer to such cases as Associated Press v. Walker, decided *sub nom.* Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964); and NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

missioner makes a conscientious effort to identify and persuade Negroes to serve. Whether or not such procedures amount to a denial of 14th Amendment rights, see Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); Collins v. Walker, 329 F.2d 100 (5 Cir. 1964), defendants point to no State statute or law of general application authorizing racial discrimination in the selection of juries.

"The *Strauder-Rives* doctrine, as consistently applied in all these cases, required a removal petition to allege not merely that rights of equality would be denied or could not be enforced, but that the denial would take place in the courts of the State. The doctrine also required that the denial be manifest in a formal expression of state law. This requirement served two ends. It ensured that removal would be available only in cases where the predicted denial appeared with relative clarity prior to trial. It also ensured that the task of prediction would not involve a detailed analysis by a federal judge of the likely disposition of particular federal claims by particular state courts. That task not only would have been difficult, but it also would have involved federal judges in the unseemly process of prejudging their brethren of the state courts." Rachel, 384 U.S. at 803–804, 86 S.Ct. at 1796.

The old decisions discussed in *Rachel* have not been repudiated. Peacock, 384 U.S. at 831, 86 S.Ct. 1800, 16 L.Ed.2d 944. Defendants herein have not stated grounds for removal by alleging discriminatory jury selection procedures in Baltimore County. Wansley v. Virginia, 368 F.2d 71 (4 Cir. 1966); Virginia v. Jones, 367 F.2d 154 (4 Cir. 1966); Bass v. Mississippi, 381 F.2d 692 (5 Cir. 1967).

■■■ Defendants allege that if they exercise their State law right to have the case removed to a different county, "they run the risk of having it moved to an area of the state where prejudices are as bad or worse than those in Baltimore County, and where the possibility of jury members being sympathetic to the Ku Klux Klan and its unconstitutional objectives is greatly increased." This does not state grounds sufficient for removal. See Maryland v. Brown, 295 F.Supp. 63 (D.Md.1969). This Court is confident that Maryland judges will treat defendants fairly.

■■■ Defendants also allege in substance that in sending the telegrams in question they were exercising their right of free speech and protest under the First and Fourteenth Amendments, that the prosecution of the suit will deter them and others from the future exercise of such rights, and that the suit is "being carried on with the sole purpose of harassing defendants and of punishing them for and deterring them from the exercise of their First Amendment rights."

It is not necessary to decide at this time whether defendants' telegrams and testimony were protected by the First Amendment. Assuming that they were, that is no ground for removal. As was stated in *Peacock*: "The First Amendment rights of free expression, for example, so heavily relied upon in the removal petitions, are not rights arising under a law providing for 'equal civil rights' within the meaning of § 1443(1)." 384 U.S. at 825, 86 S.Ct. at 1811. See also City of Chester v. Anderson, 347 F.2d 823 (3 Cir. 1965), cert. denied, 384 U.S. 1003, 86 S.Ct. 1910, 16 L.Ed.2d 1017 (1966); New York v. Galamison, 342 F.2d 255, 8 A.L.R.3d 263 (2 Cir. 1965), cert. denied, 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965). Nor do 42 U.S.C. §§ 1983 and 1985, cited by defendants, provide for "equal civil rights" within the meaning of 28 U.S.C. § 1443(1). *Galamison, supra*, 342 F.2d at 266.

■■■ Finally, defendants allege that they acted under color of authority derived from the Federal Constitution, an apparent reference to 28 U.S.C. § 1443 (2). *Peacock*, however, specifically holds that § 1443(2), "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing

for equal civil rights." 384 U.S. at 824, 86 S.Ct. at 1810.

This action must be and is hereby remanded to the Circuit Court for Baltimore County, where petitioners will have ample opportunity to raise their defenses based upon federal law.