[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10656
Non-Argument Calendar

_____

D.C. Docket No. 6:18-cv-00006-RSB-BWC

STATE OF GEORGIA,

Plaintiff-Appellee,

versus

WASEEM DAKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 27, 2021)

Before MARTIN, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Waseem Daker appeals the district court's orders dismissing his notice of removal of his state criminal prosecution and remanding to state court and denying his rule 59(e) motion. He argues that the district court erred because he had a valid basis for removal under 28 U.S.C. section 1443(1) and because his rule 59(e) motion was timely. We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Daker is serving a life sentence in Georgia state prison. After getting into an altercation with prison officials over the length of his beard, Daker was charged in state court with two counts of obstruction of an officer.

Daker filed a notice to remove his state court charges to federal court under 28 U.S.C. sections 1443 and 1446 and 42 U.S.C. section 2000cc—the Religious Land Use and Institutionalized Persons Act. Daker alleged that removal was appropriate because the state prosecution violated the First and Fourteenth Amendments, and the Act. The state prosecution violated his constitutional and statutory rights, Daker argued, because it was retaliation for the exercise of his religious beliefs. Daker also argued that the state prosecution violated the Eighth Amendment because the correctional officers attacked and forcibly shaved him. Finally, Daker alleged that he could not enforce these federal rights in state court because Georgia did not recognize the Act "as a defense to criminal cases."

2

The district court dismissed Daker's notice of removal and remanded the prosecution to state court. The district court concluded that the Act was not a federal law providing "specific civil rights stated in terms of racial equality" and therefore was not a basis for removal under section 1443(1). Daker's efforts to remove his state prosecution also failed, the district court explained, because his claim that the state prosecution violated his First, Eighth, and Fourteenth Amendment rights implicated broad constitutional guarantees of general application rather than "rights implicating racial equality." The district court also denied Daker's pending motion for law library access as moot.

The district court entered judgment on March 8, 2019. On April 4, 2019, Daker signed a rule 59(e) motion to vacate the district court's judgment. This motion was filed and placed on the district court's docket on April 24, 2019. Daker argued that the district court erred by denying his motion for law library access as moot because he was unable to identify additional valid grounds for removal without access to the law library.

The district court denied Daker's postjudgment motion. The district court found that the motion had been filed more than twenty-eight days after judgment, which was untimely for a rule 59(e) motion. The district court treated it as a rule 60(b) motion and concluded it did not satisfy any of the grounds for relief provided by rule 60(b). This is Daker's appeal.

3

## STANDARDS OF REVIEW

We review de novo whether the district court had subject matter jurisdiction after removal. Castleberry v. Goldome Credit Corp., 408 F.3d 773, 780–81 (11th Cir. 2005). Ordinarily, we lack jurisdiction to review an order remanding a removed case for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c), (d); Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 641 (11th Cir. 2007). But we have jurisdiction to review the district court's judgment that the removing party did not meet the requirements for section 1443 removal. See Alabama v. Conley, 245 F.3d 1292, 1293 n.1 (11th Cir. 2001).

We review the district court's denial of a postjudgment motion for an abuse of discretion. See Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999) (rule 60(b) motions); Lambert v. Fulton Cnty., Ga., 253 F.3d 588, 598 (11th Cir. 2001) (rule 59(e) motions).

## DISCUSSION

Daker argues that the district court erred by: (1) concluding that he had not established a valid basis for removal under section 1443(1); and (2) concluding that his rule 59(e) motion was untimely, construing it as a rule 60(b) motion, and denying it. We address each argument in turn.

4

*Removal*

A defendant may remove a state criminal prosecution to federal court where the defendant "is denied or cannot enforce in [the state courts] a right under any law providing for the equal civil rights of citizens of the United States . . . ." 28 U.S.C. § 1443(1). A valid section 1443(1) removal notice must satisfy a two-part test. Conley, 245 F.3d at 1295. "First, the petitioner must show that the right upon which the petitioner relies arises under a federal law 'providing for specific civil rights stated in terms of racial equality.'" Id. (quoting Georgia v. Rachel, 384 U.S. 780, 792 (1966)). "The phrase 'any law providing for . . . equal civil rights' refers to laws 'providing for specific civil rights stated in terms of racial equality,' and does not include rights of 'general application available to all persons or citizens.'" Id. (quoting Rachel, 384 U.S. at 792). "Second, the petitioner must show that he has been denied or cannot enforce that right in the state courts." Id.

Daker argued in the district court that he was entitled to removal under section 1443(1) because the Act "protects his rights to religious exercise and equal protection," and the state courts "do not recognize the [Act] as a defense to criminal cases[.]" But the Act is not a law "providing for specific civil rights stated in terms of racial equality." Rachel, 384 U.S. at 792. Rather, "Congress enacted [the Act] . . . to provide very broad protection for religious liberty." Holt v. Hobbs, 574 U.S. 352, 356 (2015) (quotation omitted). Because the Act's purpose is to protect

5

religious liberty rather than to safeguard racial equality, it is not a basis for removal under section 1443(1).  See Rachel, 384 U.S. at 792.

Notwithstanding the first prong of Rachel, Daker argues that he was entitled to removal under section 1443(1) for four reasons.  First, Daker argues that Rachel's first prong is "atextual," "incorrect," and contrary to the plain language of section 1443(1).  But "we are bound to follow [the] Supreme Court," Overlook Gardens Props., LLC v. ORIX USA, L.P., 927 F.3d 1194, 1201 (11th Cir. 2019), even if we think its decision is incorrect or atextual.  See Jaffree v. Wallace, 705 F.2d 1526, 1533 (11th Cir. 1983) ("If the Supreme Court errs, no other court may correct it."); Hutto v. Davis, 454 U.S. 370, 375 (1982) ("[A] precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.").

Second, Daker argues that the Act superseded the first prong of Rachel's two-part test because Congress mandated that the Act "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).  But section 1443(1) protects racial equality rather than religious liberty; thus, it was unaffected by the Act's passage.  The Act's entitlement to a broad construction does not change how we must interpret section 1443(1).  When construing the phrase "any law providing

6

for the equal civil rights," we remain bound by the interpretation given to us by the Supreme Court in Rachel.

Third, Daker argues that Rachel allows for removal under section 1443(1) for any claim couched in terms of equality generally. But that is not how we have interpreted Rachel. We have interpreted Rachel to limit removal under section 1443(1) to federal laws "providing for specific civil rights stated in terms of racial equality." See Conley, 245 F.3d at 1295 (quoting Rachel, 384 U.S. at 792); Sinclair v. Louisiana, 384 F.2d 310, 310 (5th Cir. 1967) ("[T]he removal statute contemplates civil rights stated in terms of racial equality."); Bass v. Mississippi, 381 F.2d 692, 697 (5th Cir. 1967) (same). In the same way that we are bound by Supreme Court precedent, we are also bound by our prior panel precedent. See United States v. Sneed, 600 F.3d 1326, 1332 (11th Cir. 2010) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc.").

Fourth and finally, Daker argues that even if Rachel is limited to civil rights laws stated in terms of racial equality, his notice of removal satisfied that standard. He argues that the state prison's beard-length policy discriminates on the basis of race because it "reflects hostility" to "Arabs" whose "racial backgrounds and ethnic traditions have historically embraced beards." Thus, Daker argues that the state's "retaliatory prosecution" was "necessarily intertwined" with his race. But our focus

7

isn't on whether there's a racial component to the state proceeding. Our focus is on whether the civil rights law the removing party relies on as the basis for removal provides for civil rights stated in terms of racial equality. Although Daker couches his allegations in terms of race, the Religious Land Use and Institutionalized Persons Act—the civil rights law he invokes as the basis for removal under section 1443(1)—is one of "general application available to all persons or citizens." See Conley, 245 F.3d at 1295 (quoting Rachel, 384 U.S. at 792). In other words, the religious liberties protected by the Act apply regardless of the prisoner's race. See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 436 (2006) ("[T]he [Act] . . . allows federal and state prisoners to seek religious accommodations"). Because the federal law underlying Daker's notice of removal is stated only in terms of religious liberty rather than racial equality, section 1443(1) doesn't support removal to federal court. See Williams v. Nichols, 464 F.2d 563, 564 (5th Cir. 1972) ("Removal under [section] 1443(1) is permissible only when a right conferred by a law providing for specific civil rights stated in terms of racial equality is denied or cannot be enforced in the state court.").

Daker also failed to satisfy Rachel's second prong. The second prong of Rachel required Daker to show that "he has been denied" an equal civil right under federal law "or cannot enforce that right in the state courts." See Conley, 245 F.3d at 1295. "Generally, the denial of the petitioner's equal civil rights must be 'manifest

8

in a formal expression of state law.'" Id. at 1296 (quoting Rachel, 384 U.S. at 803). Daker's notice of removal cites to no formal expression of state law prohibiting him from asserting his rights under the Act in state court, and he hasn't cited to any on appeal.

But "under a narrow exception recognized by" Rachel, section 1443(1) removal is proper "even where the action is premised upon a facially neutral state law" if "the very act of bringing the state court proceedings will constitute a denial of the rights conferred by the federal statute." Id. Daker argues that the state charges against him fell within Rachel's "narrow exception" because they were retaliation for his assertion of his "religious rights" under the Act. Daker also argues that the charges satisfied Rachel's "narrow exception" because the state trial court has thus far "stymied" his efforts to raise a defense under the Act.

We reject Daker's argument that removal was proper under Rachel's narrow exception. "It is not enough to support removal under [section] 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, and that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court." City of Greenwood v. Peacock, 384 U.S. 808, 827 (1966). In Rachel, the very act of bringing state trespass charges against the defendants—who were arrested for protesting inside a segregated restaurant—violated the Civil

9

Rights Act of 1964 because that law barred state prosecutions for "peaceful attempts to be served upon an equal basis" in an establishment. 384 U.S. at 785. Here, there is no analogous provision in the Act barring the state prosecution for obstructing prison officials. The Act instead allows a party to "assert a violation of [the Act] as a claim or defense in a judicial proceeding . . . ." 42 U.S.C. § 2000cc-2(a). Because the Act provides only a defense to the proceeding, as opposed to barring the proceeding, Daker cannot show that the mere act of prosecuting him in state court violates his rights under the Act.

Moreover, section 1443(1) removal is improper where "any denial of federal rights that might come to pass as the proceedings progressed could be redressed by direct review of the federal claims by the state appellate court and the United States Supreme Court or in other proceedings designed to remedy claims of unfair proceedings, denial of equal protection, and rights protected under [42 U.S.C. section 1983]." Conley, 245 F.3d at 1298. It is impossible to know at this stage whether "the state trial court will find [Daker] guilty if he is innocent." See Peacock, 384 U.S. at 827. And if Daker were to ultimately be found guilty, he would be entitled to direct review of his conviction by the state appellate court and, eventually, the Supreme Court. See id.; Conley, at 245 F.3d at 1298. Because Daker has multiple avenues to seek relief, he has not shown that the state courts "cannot enforce" his federal civil rights. See Conley, 245 F.3d at 1295, 1298.

10

In sum, Daker has failed to satisfy <u>Rachel</u>'s first prong because the federal statute he relies on is not a civil rights law stated in terms of racial equality, and he has failed to satisfy <u>Rachel</u>'s second prong because he failed to show that he has been denied or cannot enforce that right in state court.  Thus, we affirm the district court's order dismissing Daker's notice of removal and remanding the prosecution to state court.

*Rule 59(e)*

Daker also argues that the district court erred by finding his rule 59(e) motion untimely and construing it as a rule 60(b) motion.  Although the district court entered judgment on March 8, 2019 and Daker's motion was filed on April 24, 2019—a gap of over twenty-eight days—he signed the motion on April 4.  Thus, Daker argues that his motion was timely pursuant to the prison mailbox rule.

We agree that Daker's motion was filed on time.  A rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  But "[u]nder the prison mailbox rule, a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  <u>Jeffries v. United States</u>, 748 F.3d 1310, 1314 (11th Cir. 2014) (citation omitted).  We presume, absent evidence to the contrary, that a prisoner delivered a filing to prison authorities on the date that he signed it.  <u>Id.</u>  Because Daker's rule 59(e) motion was signed on April 4—fewer than twenty-eight days after the entry of judgment—it was timely.

11

But any error by the district court was harmless. "The only grounds for granting [a rule 59] motion are newly-discovered evidence or manifest errors of law or fact." In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999). Daker did not allege, much less establish, any of these grounds. Rather, he argued that the district court erred by dismissing his notice of removal because it should have first granted his motion for law library access so that he could do more research to determine whether he had "valid grounds for removal . . . ."

The district court's denial of Daker's motion for law library access clearly wasn't newly discovered evidence. Nor was it a manifest error of law; Daker conceded in his motion that he had access to numerous relevant legal materials. He conceded that he had access to multiple cases analyzing section 1443(1), including Rachel and Peacock, and had a "personal legal book" in his possession. He conceded that he was able to submit requests for the prison law librarian to print out statutes, cases, and rules. And he conceded that he was already familiar with the rules of civil procedure because of research he had done in his prior pro se lawsuits.[1] Given these concessions, the district court didn't commit a manifest error of law in denying

---

[1] These prior pro se lawsuits are not insignificant in number. Daker is a "serial litigant who has clogged the federal courts with frivolous litigation" by "submitt[ing] over a thousand pro se filings in over a hundred actions and appeals in at least nine different federal courts." Daker v. Comm'r, Ga. Dep't of Corr., 820 F.3d 1278, 1281 (11th Cir. 2016).

12

Daker's motion for law library access.  Thus, we affirm its order denying Daker's

rule 59(e) motion.

**AFFIRMED.**[2]

---

[2] We deny all outstanding motions as moot.